IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELYN BUCZKIEWICZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No.: 07 C 6421 |
| v. | ) |
| | ) Suzanne B. Conlon, Judge |
| MICHAEL J. ASTRUE, Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Jacquelyn Buczkiewicz seeks judicial review of a final decision of the Commissioner of

Social Security ("the Commissioner") denying her application for Disability Insurance Benefits

("DIB") pursuant to Title II of the Social Security Act ("the Act"), 42 U.S.C. § 405(g). The

parties cross-move for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons set

forth below, Buczkiewicz's summary judgment motion is granted in part and this case is

remanded to the Social Security Administration.

## PROCEDURAL BACKGROUND

On November 13, 2002, Buczkiewicz filed an application for DIB, alleging disability for

impairments beginning February 4, 1997. She was last insured for DIB through June 30, 2004.

After presiding over a hearing, the administrative law judge ("ALJ") issued a decision finding

that Buczkiewicz was not disabled. R. 330-36. Due to the receipt of additional evidence, the

Appeals Council remanded the case to the ALJ for further consideration. R. 17. The ALJ held a

supplemental hearing on March 16, 2006; Buczkiewicz (represented by her attorney), medical

expert William Newman, M.D., and vocational expert Cheryl Hoiseth testified. R. 445-90. The

ALJ found Buczkiewicz was not disabled because she retained the capacity to perform her past relevant work and had the ability to work in 3,000 jobs in the local economy. R. 21-22. The Appeals Council denied Buczkiewicz's request for review, leaving the ALJ's decision as the final decision of the Commissioner.

## BACKGROUND

### I.    Physical History

Buczkiewicz was 53 years old when she was last insured for DIB. R. 55. She completed the eighth grade and was a teacher's aide for disabled students from 1995 to February 1997. R. 21, 64. In early February 1997, she injured her right hand and wrist while trying to restrain a disabled student. R. 139. Following her injury, she was unable to work as a teacher's aide, but worked as a concession worker and ticket taker at a movie theater, from September 1999 to February 2001.[1] R. 86.

### A.    Buczkiewicz's Testimony

At the initial ALJ hearing, Buczkiewicz testified that since February 1997, she has experienced severe pain in her right hand and wrist, stemming from her work injury. She has had four surgeries on the hand/wrist area, culminating with a right wrist fusion in June 1998. She testified to suffering from hypertension as well. R. 431. She was on blood pressure medication, Lopressor, as well as Zocor and extra strength Tylenol. R. 432. She claimed Lopressor made her drowsy, and that she took a one-hour nap every afternoon. R. 458. She reported difficulty using her right hand for dressing, using buttons, door knobs, and toilets. R. 434-435.

---

[1]The dates Buczkiewicz worked at the movie theater are unclear. She testified to working at the theater from September 1998 through September 1999, but documents suggest otherwise. *Compare* R. 86, 223 *with* R. 429. The exact dates are irrelevant to the court's analysis.

At the supplemental hearing, Buczkiewicz testified she "probably" has arthritis in her left shoulder due to overuse (overcompensating for her right hand), and that the pain began while she started working at the movie theater. R. 450. At the theater, she lifted 50-60 pounds of buckets and stock (approximately once a week) with her left arm alone. R. 456, 478. Her left arm became so painful it hurt to the touch. R. 456. Since ceasing work altogether, her left arm has improved. R. 450.

Buczkiewicz's gynecologist instructed her not to lift over ten pounds because of a dropped bladder problem, which began approximately in 2002. R. 451, 455. At the time of the supplemental hearing in March 6, 2006, Buczkiewicz testified she does household chores – such as cleaning and laundry – but with the assistance of her husband, who does all of the physical labor. R. 454. Previously she testified that she handled the laundry and other household chores. R. 434.

## B. Medical Evidence

### 1. 1997

After injuring her right hand and wrist in February 1997, Buczkiewicz saw Eugene J. Bartucci, M.D. R. 139. Dr. Bartucci noted that x-rays revealed no fracture, but that Buczkiewicz's hand was quite tender and somewhat swollen. R. 139. He recommended splint mobilization and a re-check in 10-14 days before returning to work. R. 139. Later in the month, Dr. Bartucci recommended two-weeks of physical therapy. R. 138.

Buczkiewicz was later examined by Scott Segerman M.D. in April 1997. He opined that she had a scapholunate disassociation and performed arthroscopic surgery using K-wires in early May 1997. R. 137-38, 147-51. Less than a week later, Buczkiewicz reported she was doing well

3

and her pain was diminishing. R. 166. Dr. Segerman noted at that appointment that Buczkiewicz should only perform one-handed work with a splint and would need a lifting restriction until three months post-operation. R. 163-66. A few months later, Dr. Segerman surgically removed the K-wires in Buczkiewicz's right hand. R. 162. Buczkiewicz reported her wrist felt better. R. 161. Dr. Segerman reiterated his recommendation that Buczkiewicz minimally use her right hand at work within the limits of the splint. R. 161. Her right hand was immobilized for 10 weeks; she then had physical and occupational therapy to return to work. R. 137, 144-45, 169-71.

By August 1997, Dr. Segerman noted that Buczkiewicz only needed the splint for protection. R. 161. A few months later, Dr. Segerman observed Buczkiewicz expressed painful symptoms, but that her symptoms did not suggest arthritis. R. 160. He noted that she did not want to complete the therapy program, in spite of therapist notations that she had improved her strength and endurance with therapy. R. 160. Dr. Segerman encouraged Buczkiewicz to resume her right hand use as tolerated. R. 159. Although Buczkiewicz indicated her employer required 100% usage of both hands to return to work, Dr. Segerman opined that her right wrist would never be 100% recovered, and recommended reasonable activity modification. R. 159.

In October 1997, Dr. Bartucci recommended Buczkiewicz see specialist Daniel Nagle, M.D. for an evaluation. R. 137. Dr. Nagle evaluated Buczkiewicz, and advised Dr. Bartucci that Buczkiewicz's condition could remedy itself or may require additional surgery. R. 263. Dr. Nagle opined that he did not believe any light work caused a negative impact on her hand, but indicated she should not forcibly restrain children or do any heavy lifting or grasping. R. 260, 263.

4

The next month, Buczkiewicz reported to Dr. Segerman that when she tried to resume full work duties, she experienced increased wrist pain and swelling. R. 158. Dr. Segerman recommended Buczkiewicz continue with modified work, avoiding heavy lifting using her right hand and that she try to perform regular work duties on a gradual basis. R. 158. Later Dr. Segerman reviewed x-rays and noted that Buczkiewicz's ligament repair did not heal. R. 157. Buczkiewicz decided against elective surgery, but Dr. Segerman advised her to return to see him at her discretion. R. 157. He advised her to continue right hand use as tolerated, but to avoid strenuous use. R. 157.

### 2.    1998

Dr. Nagle evaluated Buczkiewicz again in April 1998 though she had no active treatment since October 1997. R. 277. Buczkiewicz chose to undergo a right wrist fusion in early June 1998. R. 258, 276. Dr. Nagle informed Buczkiewicz's employer that she could not return to heavy lifting work for four to six months following her surgery, but that he would consider light activities. R. 254. After the surgery, Buczkiewicz indicated she was "really great," had gone off pain medications, and was only taking Tylenol. R. 276. Later, Dr. Nagle opined she could return to light non-repetitive work activities, where she would not lift more than one pound with her right hand. R. 250, 275. By September 1998, Dr. Nagle increased Buczkiewicz's light duty work restrictions to include lifting up to 10 pounds with her right hand. R. 248.

### 3.    1999

In February 1999, medical examiner Michael Bednar, M.D. examined Buczkiewicz. R. 182-84. Dr. Bednar noted Buczkiewicz's occupational therapist found she had grip strength of 44

5

pounds on the right and 103 pounds on the left, leading to his conclusion that she could perform light level work eight hours a day. R. 183.

Occupational therapist Evelyn Junger evaluated Buczkiewicz in May 1999. She noted Buczkiewicz's grip strength and found that she could lift 20 pounds from floor to waist with minimal pain complaints, although she continued to have difficulty with other daily activities. R. 188. That same month, Buczkiewicz saw her family practice physician, William Boblick, M.D. R. 213. Dr. Boblick opined that she was able to do some activities with her right hand, but did not have full use of it. R. 213.

In June 1999, Dr. Nagle drafted a work restriction form noting that Buczkiewicz was able to return to restricted work duties where she could not lift more than 20 pounds with her right hand and should avoid repetitive grasping with the hand. R. 264. In July 1999, Buczkiewicz reported that her right index finger was triggering. R. 236, 266. Dr. Nagle noted that she reached maximum medical improvement with respect to her right wrist and that he would see her in one year to determine whether she required plate removal from the wrist. R. 236. In August 1999, Buczkiewicz found a job working at the concession counter at a local theater. R. 235.

In mid-September 1999, Dr. Nagle performed an outpatient release of the right index and long fingers under local anesthesia. R. 199-200, 236. Later, Buczkiewicz returned to see Dr. Boblick, who noted that she was applying for disability and that she had pain and stiffness in her right wrist. R. 210. He noted that she had 50% less strength in her right wrist. R. 210. He opined she would be unable to do prolonged fine work using her right hand. R. 210.

In early October 1999, Dr. Nagle indicated Buczkiewicz could resume light lifting work activities and work at the theater. R. 230. Later in October 1999, a state agency reviewing

6

physician opined that Buczkiewicz could perform light level work (occasional lifting of up to 20 pounds, frequent lifting of up to 10 pounds). R. 215-22. In January 2003, another state agency reviewing physician agreed with the assessment. R. 314-21.

By November 1999, Buczkiewicz ceased having triggers in her finger. R. 228. She reported that she had discomfort in her forearm. R. 228. Dr. Nagle indicated this was due to the plate in her wrist and that two years after surgery, he would evaluate whether the plate should be removed. R. 228. He opined that she could continue working at the theater and that the most recent functional capacity evaluation had valid and permanent work restrictions. R. 229.

### 4. 2000

Buczkiewicz visited Dr. Nagle in May 2000. Dr. Nagle noted she felt better after the wrist fusion (notwithstanding some swelling), and was still working at the theater five days a week. R. 223. She began using her left hand more frequently, and Dr. Nagle reiterated that previous work restrictions were permanent. R. 224.

### 5. 2002

In December 2002, Buczkiewicz saw Dilp Patel, M.D. for a consultative examination regarding right wrist pain. R. 311-13. She complained that by using her left hand more, she started having left shoulder pain, which eventually went away. R. 311. Dr. Patel noted that she had no range of motion and was unable to bend her right wrist, had a mild degree of muscle wasting, and almost normal grip strength. R. 312.

### 6. 2003

In March 2003, Dr. Boblick examined Buczkiewicz; he was aware Buczkiewicz was applying for disability due to pain in her right wrist and left wrist from overuse. R. 368. He

7

concluded she was disabled due to a right wrist fracture/fusion and that she had no mobility and limited strength as a result. R. 323. A few weeks later, he drafted a one-sentence letter stating, "[t]his patient is suffering from polyarthritis, due to overuse of the left wrist, as a result of injury to the right wrist." R. 322. Dr. Boblick did not prescribe any treatment.

### 7. 2004

A month after Buczkiewicz's DIB insured status expired in July 2004, Buczkiewicz was re-evaluated by Dr. Boblick. R. 369. Dr. Boblick noted her complaints of a painful right thumb and left wrist/hand pain due to overuse. R. 369. He recommended she wear a wrist splint on her left wrist. He also indicated that she had limited use of her right hand/wrist and pain/tendinitis in her left arm. R. 366, 369.

## C. Medical Expert Testimony

After reviewing Buczkiewicz's medical history, William Newman M.D. testified at the administrative hearing that she had a fused right wrist, which the record revealed was successfully operated on. R. 463. He stated that increased activity to the right wrist could lead to arthritis. R. 470. Dr. Newman assessed her trigger finger surgery in 1999, which he deemed not disabling. R. 463. He opined that the diagnosis that she suffered from a dropped bladder (cystocele or urethrocele) restricting her to lifting 10 pounds was not entirely reliable because such conditions are correctable. R. 466. He attested that the medical evidence did not reveal an impairment (or combination of impairments) that meets or medically equals a listed impairment. R. 464.

He also testified that Buczkiewicz is likely able to do a full range of light work, and that she should be able to lift 20 pounds occasionally and 10 pounds frequently. R. 464-65.

8

Although certain tools would be difficult to grip, he opined that her grip would not be affected by her impairment. R. 464-465. Dr. Newman further testified her blood pressure medicine, Lopresser, was not a sedative. R. 467. With respect to her left shoulder and arm, Dr. Newman discounted the notion that she had disabling arthritis because the record revealed no work-up, x-rays, or treatment. R. 473.

### D.     Vocational Expert Testimony

Vocational expert Cheryl Hoiseth testified that given Buczkiewicz's age, education, work experience, and her capacity to perform a restricted range of light work as defined by Dr. Newman, she would be able to perform the ticket taker portion of her previous employment or cashier work as defined in the Dictionary of Occupational Titles. R. 481-82. Hoiseth estimated 3,000 ticket taker jobs in the area. R. 485.

However, Hoiseth testified that if Buczkiewicz's testimony is given full credit that she has no use of her right hand at all; this would constitute a severe vocational handicap in a competitive job market. R. 482-83. Hoiseth noted that napping in the middle of the day would rule out all jobs. R. 488.

## II.     The ALJ Decision

The ALJ concluded Buczkiewicz was not disabled within the meaning of the Act from the onset date to the decision date. R. 17. The ALJ found her medically determinable impairments to be severe, but those impairments did not meet or equal any impairment listed in Appendix 1, Subpart P, Regulation No. 4. R. 20. The ALJ concluded that she had residual functional capacity to "lift up to 20 pounds occasionally and 10 pounds frequently, and [can] do the standing and walking required of light work, although subject to impaired dexterity and

9

twisting with the right hand." R. 20. The ALJ indicated he considered all her reported symptoms and the extent they were consistent with objective medical evidence and other evidence based on 20 C.F.R. 404.1529 and SSRs 96-4p and 96-7p. R. 20.

The ALJ found Buczkiewicz's testimony regarding the intensity, duration, and limiting effects of her pain symptoms not entirely credible. This was because her description of the severity of the pain lacked supported findings in the documentary records, such as the lack of work-ups or treatments for her left shoulder impairment and panic attacks. R. 21. The ALJ did not give controlling weight to the opinions of treating physicians Dr. Boblick (on October 27, 2004) and Dr. Pichietti (on October 26, 2004), where they diagnosed that Buczkiewicz suffered from arthritis in both shoulders and she was to avoid lifting more than 10 pounds because of a dropped bladder. The ALJ found that these conclusions were unsupported and inconsistent with objective evidence. R. 21.

The ALJ adopted the testimony of vocational expert Hoiseth in concluding Buczkiewicz is capable of performing her past relevant work as a ticket taker in a movie theater. R. 21. The ALJ also adopted Hosieth's testimony that a person with Buczkiewicz's vocational factors and residual functional capacity would be able to perform the requirements of approximately 3,000 light unskilled ticket taker jobs in the region.

## DISCUSSION

### I. Standard of Review

Judicial review of the Commissioner's final decision is limited. The role of the reviewing court is to determine whether substantial evidence in the record as a whole supports the

Commissioner's decision to deny benefits. 42 U.S.C. § 402(g); *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In reviewing the record, the court may not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The court will "conduct a critical review of the evidence" and will not let the Commissioner's decision stand "if it lacks evidentiary support or an adequate discussion of the issues." *Id.* While the ALJ "must build an accurate and logical bridge from the evidence to [his] conclusion, [he] need not discuss every piece of evidence in the record." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ must "sufficiently articulate [his] assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'" *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam) (quoting *Stephens v.. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)).

## II.    Analysis

To be entitled to disability insurance benefits, Buczkiewicz must establish she is disabled. A person is disabled if "she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is disabled, the ALJ must follow a five-step inquiry: "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling ('a

11

listing-level impairment'), (4) if the claimant does not have a conclusively disabling impairment, whether she can perform her past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon*, 270 F.3d at 1176; *see* 20 C.F.R. § 404.1520(a)(4)(i)-(v). Buczkiewicz has the burden of establishing a disability at steps one through four. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001). If she reaches step five, the burden shifts to the Commissioner to show she is capable of performing work in the national economy. *Id.* at 886.

At step one, the ALJ found Buczkiewicz was not engaged in substantial gainful activity and had not since February 4, 1997, the alleged onset date. R. 20. At step two, the ALJ found her osteoarthritis and fusion of the right wrist were severe impairments. R. 20. At step three, the ALJ found that the impairments did not meet or medically equal any impairment that the Commissioner considered conclusively disabling. R. 20. At step four, the ALJ determined she could perform her past relevant work as a ticket taker at a movie theater. R. 21. At step five, the ALJ found her capable of performing other ticket taker jobs existing in significant numbers in the area. R. 21-22.

Buczkiewicz argues the ALJ erred in finding: (1) her severe impairments consisted only of osteoarthritis and fusion of the right wrist; (2) her medically determinable impairments did not meet or equal those listed in Appendix 1, Subpart P, Regulation No. 4; (3) her residual functional capacity to perform light work; (4) her capacity to perform the ticket taker portion of past work; (5) her ability to perform a significant number of light level jobs in the area; and (6) she was not a credible witness.

## A.     Step 2: Buczkiewicz's Severe Impairments

12

The ALJ found that Buczkiewicz suffered from severe impairments of osteoarthritis and fusion of the right wrist. R. 20. She contends this finding is unsupported by substantial evidence because her treating physician Dr. Boblick opined that she also suffered from polyarthritis due to overuse of the left wrist (on March 19, 2003) and bilateral shoulder pain and stiffness (on October 25, 2006). Buczkiewicz asserts her subjective complaints, coupled with specialist Dr. Nagle's 1998 opinion that she was developing flexor tenosynnovitis on her left long finger, supports her severity claim. R. 246. She argues this evidence was further corroborated by a 2002 evaluation and therapist testimony that she was overusing her left arm.

The ALJ did not completely discount that Buczkiewicz suffered from left arm pain, but rather found that her characterization of the intensity, duration and limiting effects of the *severity* of her left arm pain was not entirely credible. R. 21. This was because Dr. Boblick's opinion regarding her left arm was not supported by medical evidence. R. 20 (citing SSR 96-2p). Indeed, apart from Dr. Boblick's opinions, there were no work-ups on the condition, no x-rays, and no treatment prescribed for Buczkiewicz.

To the contrary, there was evidence that Buczkiewicz's left arm improved over time, and that the pain had "gone away." R. 311, 450. Thus, the ALJ's decision to give less controlling weight to Dr. Boblick's opinion and to find that Buczkiewicz's left arm pain was not *disabling* was supported by substantial evidence.

**B.      Step 3: Medically Determinable Impairments Equal to a Listing**

The ALJ found that Buczkiewicz's impairments did not meet or medically equal a listing under Appendix 1, Subpart P, Regulation No. 4. Buczkiewicz argues the weight of evidence showed her impairments met Listing 1.08, which reads, in relevant part:

13

> 1.08. Soft tissue injury (e.g., burns) of an upper or lower extremity, trunk, or face and head, under continuing surgical management, as defined in 1.00M, directed toward the salvage or restoration of major function, and such major function was not restored or expected to be restored within 12 months of onset.

120 C.F.R. Pt. 404, Subpt. P., App. 1.08. The ALJ's one-sentence conclusion on this question stated only, "the claimant's impairments do not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Notwithstanding whether Buczkiewicz failed to identify evidence establishing application of Listing 1.08, it is unclear from the ALJ's conclusion as to what evidence was considered in making this assessment. There is nothing in the record on this issue for this court to review. This shortcoming requires a remand on this issue. *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

The Commissioner responds that substantial evidence supports the ALJ's finding because Buczkiewicz received four surgeries during the relevant time and that after each surgery, she recovered to the extent she could perform light level work within 12 months. But this does not obviate the ALJ's failure to mention the specific listings under consideration, or the evidence in support of the conclusion. These failures, if combined with a "perfunctory analysis," may require a remand. *See Ribaudo*, 458 F.3d at 583; *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004); *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); *see also Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). In *Ribaudo*, for example, the Seventh Circuit remanded a case to the Social Security Administration because the ALJ's decision regarding step three was entirely conclusory and offered no analysis that would enable meaningful judicial review. 315 F.3d at 786. The ALJ did not even mention the specific listings under which it considered the claimant's impairments, nor did the ALJ discuss conflicting evidence. *Id.*

14

Similarly, the ALJ did not identify the specific listings considered in evaluating Buczkiewicz's various impairments, even though she proposed four applicable listings: 1.02 (major dysfunction upper extremities); 1.07 (fracture of an upper extremity); 14.09 (arthritis); and 14.00 (severe allergies). R. 134-135. Although the ALJ vaguely referred to evidence that may dispel application of these listings (in his discussion of Buczkiewicz's credibility determination), at step three there is absolutely no analysis with respect to how Buczkiewicz's impairments do not satisfy any listing. *Compare Sienkiewicz v. Barnhart*, No. 02 C 6332, 2003 WL 22757756, at *6 (N.D. Ill. Nov. 19, 2003) (Anderson, J.) (ALJ adequately incorporated plaintiff's residual functional capacity analysis as support for step three finding), *aff'd*, 409 F.3d 798 (7th Cir. 2005).

The ALJ is not required to mention every piece of evidence in the record, *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004), but the failure to explain any evidence that potentially supported Buczkiewicz's claim casts doubt on whether the ALJ undertook an analysis of step three at all. *See Brindisi*, 315 F.3d at 786 (criticizing ALJ's failure to discuss conflicting evidence at step three inquiry including the strongest piece of evidence supporting claimant's case). For this reason, the case must be remanded to the Social Security Administration so the agency can conduct a more thorough analysis of the evidence at step three.

## C.  Buczkiewicz's Residual Functional Capacity

Buczkiewicz contends the ALJ's decision regarding her residual functional capacity was unsupported by substantial evidence. More specifically, she argues the ALJ's assessment lacked incorporation of her left arm problems and an adequate function-by-function assessment as required under SSR 96-8P. *Cf. Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991) (Social

15

Security rulings are binding on all components of the Social Security Administration, including ALJs).

The ALJ found that Buczkiewicz had "the residual functional capacity to lift up to 20 pounds occasionally and 10 pounds frequently, although subject to impaired dexterity and twisting with the right hand." Residual functional capacity is the most an individual can still do despite her limitations. SSR 96-8p, 1996 WL 374184 at *1. It is an assessment of the extent to which an "individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* at *2; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation). The "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations) . . . and must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* at *7; *Marlow v. Barnhart*, No. 04 C 7780, 2005 WL 2562652, at *18 n.30 (N.D. Ill. Oct. 13, 2005) (Levin, M.J.).

The ALJ cited Dr. Newman's testimony and concluded Buczkiewicz had a residual functional capacity commensurate with that opinion. But the ALJ failed to conduct a function-by-function analysis of her abilities as required by SSR 96-8p, and refrained from providing any narrative discussion of how the evidence supports his conclusion. As one example, the ALJ did not explain how Buczkiewicz, who could not perform prolonged fine

16

manipulation with her right hand, *see* R. 20, could perform light work with that limitation. The ALJ did not describe how her left arm pain (although not severe) limited her capacity to work.[2] *See, e.g., Harris v. Barnhart,* No. 03 C 3185, 2005 WL 1655202, at \*13-14 (N.D. Ill. Apr. 26, 2005) (Ashman, M.J.) (unaccounted for medical evidence should be considered in residual functional capacity determination).

The ALJ's failure to articulate a reasoned basis for his conclusion warrants a remand. *See, e.g., Henderson v. Barnhart,* 349 F.3d 434, 436 (7th Cir. 2003). The failure to comply with SSR 96-8p renders the ALJ's residual functional capacity determination unsupported by substantial evidence. *See, e.g., Unger v. Barnhart,* 507 F. Supp. 2d 929, 940 -941 (N.D. Ill. 2007) (Mason, M.J.). The ALJ must comply with SSR 96-8p and logically bridge the evidence to his finding.

## D. Step 4: Capacity to Perform Past Relevant Work

At step four, the ALJ must determine whether a claimant can still perform specific, essential mental and physical functions of her past work despite impairments. *Smith v. Barnhart,* 388 F.3d 251, 252-53 (7th Cir. 2004). Past work will be considered if it reflects substantial gainful activity. R. 18-19 (citing 20 CFR § 404.1565(a)). The ALJ found that Buczkiewicz could perform the ticket taker portion of her past work. R. 21. Buczkiewicz argues this conclusion is unfounded because her past ticket taker job was not substantial gainful activity.

In the ALJ's initial decision, he acknowledged the likelihood that her former ticket taker position did not constitute substantial gainful activity. R. 332, 334. In the ALJ's final decision, however, there was no consideration of this issue whatsoever. Thus, the ALJ failed to articulate

---

[2]This is particularly true since the ALJ adopted Dr. Newman's opinion in its entirety. Dr. Newman opined that Buczkiewicz's left arm impairment was not *disabling* (R. 473), leaving room to find that she still suffered from left arm pain.

17

grounds to find that her past work as a ticket taker constituted substantial gainful activity. The ALJ's step four determination must be remanded. The ALJ is required to explain his residual functional capacity determination's application to step four, *see, e.g., Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002), and to clarify whether Buczkiewicz's ticket taker work constituted substantial gainful activity.

### E.    Step 5: Ability to Adjust to Other Work

Vocational expert Hoiseth testified that Buczkiewicz had the ability to perform ticket taker and "cashier II" jobs (as defined by the Dictionary of Occupational Titles). Hoiseth estimated 10,000 cashier II jobs in the area and 3,000 ticket taker jobs. At step five, the ALJ adopted this testimony to find that Buczkiewicz was able to perform the requirements of the 3,000 ticket taker jobs. Buczkiewicz argues remand is appropriate because the ALJ failed to ask Hoiseth whether there are inconsistencies between the ticket taker job (identified by Hoiseth) and its Dictionary of Occupational Titles equivalent.

The ALJ has an affirmative duty to inquire whether the requirements of a particular job identified by a vocational expert are consistent with the Dictionary of Occupational Titles. *Prochaska v. Barnhart*, 454 F.3d 731, 735-736 (7th Cir. 2006). Although the ALJ heard testimony regarding whether a ticket taker job was compatible with Buczkiewicz's various limitations, the ALJ did not ask whether Hoiseth's analysis conflicted with the Dictionary of Occupational Titles. R. 480-83. This was imperative because Buczkiewicz contends the appropriate Dictionary of Occupational Titles definition for a "ticket taker" (that of a "ticket seller," # 211.467-030), is inconsistent with Hoiseth's ticket taker job description. Buczkiewicz

argues that the Dictionary of Occupational Titles ticket taker job requires constant reaching, handling, and fingering beyond the requirements identified by Hoiseth.[3]

It is unclear whether Hoiseth's ticket taker job description is consistent with the Dictionary of Occupational Titles. That determination should have been made by the ALJ, and his failure to do so should have been identified and corrected by the Appeals Council. *Prochaska*, 454 F.3d at 736. Due to the unresolved potential inconsistency in the evidence, remand is appropriate so that the ALJ can determine whether the job requirements for the ticket taker jobs identified by Hoiseth are in fact consistent with the definitions in the Dictionary of Occupational Titles and Buczkiewicz's limitations. *Id.*

### F.   Adverse Credibility Determination

Buczkiewicz argues the ALJ erred in giving less credibility to her testimony regarding her shoulder impairment and panic attacks. She contends her credibility should be determined by comparing her testimony with Dr. Boblick's and Dr. Nagle's professional opinion regarding her ailments. The Commissioner responds that substantial evidence supports the ALJ's credibility determination.

To succeed on this ground, Buczkiewicz must overcome the highly deferential standard accorded to the ALJ's credibility determination. Because the ALJ is in a far superior position to assess the credibility of a witness, an ALJ's credibility finding is reversed only if it is "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, the ALJ must abide by

---

[3]The Commissioner contends that there could be no inconsistency with the Dictionary of Occupational Titles because Hoiseth's testimony identified "cashier II" jobs under that regulation. However, the record does not show that Hoiseth cited a corresponding Dictionary of Occupational Titles definition for the 3,000 ticket taker jobs.

the requirements of Social Security Ruling 96-7p in evaluating the credibility of statements supporting a Social Security application. *Brindisi*, 315 F.3d at 787. Under SSR 96-7p, "the ALJ's assessment of the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on [her] ability to function must be based on a consideration of all the evidence in the case record," including "medical signs and laboratory findings." SSR 96-7p.

The ALJ did not *entirely* discount Buczkiewicz's credibility. Instead, the ALJ limited the credibility determination to the "intensity, duration, and limiting effects" of Buczkiewicz's left shoulder pain and panic attacks. R. 21. This determination was due to the lack of work-ups or treatment. Indeed, none of the treatment records for these limitations indicated that Buczkiewicz was to be restricted from work. The ALJ's credibility determination is given deference, as he has "buil[t] an accurate and logical bridge between the evidence and the result." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (internal citation and quotation marks omitted); *Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005).

## CONCLUSION

For the reasons set forth above, Buczkiewicz's motion for summary judgment is granted with respect to the ALJ's step three, residual functional capacity, step four, and step five determinations. This case is remanded to the Social Security Administration. The summary judgment motions are denied in all other respects.

ENTER:

Suzanne B. Conlon
United States District Judge

May 5, 2008

21